**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DUPONT SMILES FAMILY & COSMETIC DENTISTRY, PLLC, *et al.*,

*Plaintiffs,*

v.

BTL INDUSTRIES, INC., *et al.*,

*Defendants*.

Civil Action No. 25-01332 (AHA)

**Memorandum Opinion and Order**

Dr. Laudan Izadi and her two companies—Dupont Smiles Family & Cosmetic Dentistry, PLLC, and West End Dental, PLLC—sue BTL Industries, Inc., seeking rescission of a contract to purchase cosmetic machinery from BTL Industries. Dr. Izadi and her companies also sue the two companies who financed the purchase—MMP Capital, LLC, and Marlin Leasing Corporation (doing business as PEAC Solutions)—seeking rescission of the financing agreements as well. BTL Industries and MMP Capital argue they must be sued in the jurisdictions specified in the forum-selection clauses of their respective contracts. The court agrees and transfers the claims against BTL Industries and MMP Capital to the District of Massachusetts and the Eastern District of New York, respectively.

## I. Background[1]

The thrust of the plaintiffs' complaint is that Dr. Izadi signed a contract for DuPont Smiles to buy cosmetic machinery from BTL Industries after being invited to a series of meetings and presentations in the D.C. area and being told that her dentistry practices could use the machinery in D.C. ECF No. 18 ¶¶ 13–20. The plaintiffs allege that, after BTL employees pressured her to sign the agreement by offering discounts that would otherwise be withdrawn, Dr. Izadi signed an agreement with BTL Industries to buy the two machines for $500,000. *Id.* ¶¶ 41, 52, 58–60. BTL employees then gave Dr. Izadi documents and a financing agreement from MMP Capital, identifying Dupont Smiles as the debtor and requiring Dr. Izadi to personally guarantee the loan. *Id.* ¶¶ 46, 50. The BTL employees also gave Dr. Izadi documents and a financing agreement from PEAC Solutions, identifying West End Dental as the debtor. *Id.* ¶ 53. The complaint alleges that Dr. Izadi signed the loan agreements after being subjected to further pressure tactics. *Id.* ¶¶ 58–60. After the machines were delivered to DuPont Smiles, Dr. Izadi signed an additional finance agreement with PEAC Solutions, again under pressure. *Id.* ¶¶ 69–72. Later, after consulting with a dentist BTL had referred her to and some lawyers, Dr. Izadi concluded D.C. law does not allow her to use the machines she bought in her current dental practice. *Id.* ¶¶ 80–81.

Dr. Izadi sought to rescind the purchase agreement, and—after BTL Industries declined—she and her companies sued BTL Industries, MMP Capital, and PEAC Solutions in this court. *See id.* ¶¶ 91–92. The plaintiffs seek rescission of the purchase and finance contracts based on mutual mistake, fraudulent inducement, negligent misrepresentation, fraud, and civil conspiracy. *Id.* ¶¶ 93–167. They also seek compensatory and punitive damages, costs, and fees. *Id.* at 33–34.

---

[1] At this stage, the courts accepts the complaint's allegations as true and draws all reasonable inferences in the plaintiffs' favor. *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 872 n.1 (D.C. Cir. 2019).

BTL Industries now moves to dismiss the case based on the purchase agreement's forum-selection clause, which states the parties agree "to submit all disputes arising out of, or relating to, this Agreement to a court in Middlesex County, Massachusetts." ECF No. 23-1 at 14. BTL Industries later clarified that it would accept transfer to the District of Massachusetts, which includes Middlesex County. Draft Hr'g Tr. at 31–32 (Feb. 26, 2026). Additionally, MMP Capital moves to transfer based on the forum-selection clause in its agreement, which says the parties "agree that the state and federal courts sitting in Nassau County, New York, shall have the exclusive jurisdiction over any action or proceeding to enforce this [agreement] or any action or proceeding arising under this [agreement]." ECF No. 15-1 at 2. PEAC Solutions does not move to transfer based on its forum-selection clause, preferring to stay here.

## II. Discussion

The court concludes it must transfer the claims against BTL Industries and MMP Capital. Usually, a court considering a motion to transfer "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). But "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause." *Id.* at 63. In that circumstance, courts must give the clause "controlling weight in all but the most exceptional cases." *Id.* Courts must also "deem the private-interest factors to weigh entirely in favor of the preselected forum" and give "the plaintiff's choice of forum" when filing the complaint "no weight." *Id.* at 63–64. Indeed, under such circumstance, the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is *unwarranted*." *Id.* at 64 (emphasis added).

Here, each forum-selection clause "requires that litigation proceed in a specific forum" and is therefore mandatory. *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 874–76 (D.C. Cir. 2019) (concluding such a clause is mandatory "because it provides for 'exclusive jurisdiction'" in the

selected forum); *see also St. Francis Holdings, LLC v. Cynosure, Inc.*, No. 8:20-cv-1101, 2020 WL 9601509, at *3 (M.D. Fla. Sep. 23, 2020) (finding language nearly identical to the agreements here mandatory in a similar case against MMP Capital). And the plaintiffs' claims about the purchase and financing agreements fall within their scope. *See* ECF No. 23-1 at 14 (covering "all disputes arising out of, or relating to" their agreement); ECF No. 15-1 at 2 (covering "any action or proceeding arising under" their agreement); *see also Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, 189 F. Supp. 3d 61, 68 (D.D.C. 2016) ("A claim may 'arise under' a contract (1) where the claim 'ultimately depends on the existence of a contractual relationship between the parties'; (2) 'resolution of the claims relates to interpretation of the contract'; or (3) 'contract-related tort claims involve the same operative facts as a parallel claim for breach of contract.'" (alterations omitted) (quoting *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 122 (D.D.C. 2008))). The plaintiffs do not appear to contest that the clauses are mandatory or that their claims fall within their scope—indeed, they never mention the language of the clauses.

Instead, the plaintiffs make three arguments for disregarding the forum-selection clauses, none of which are unpersuasive. The plaintiffs first argue "no contracts"—and thus no forum-selection clauses—"were entered into by the parties" here because the plaintiffs seek rescission of the contracts based on "mutual mistake as to the lawfulness of the use of the BTL equipment." ECF No. 19 at 14; *see id.* at 10–14. But seeking rescission or arguing that a contract is void does not defeat a forum-selection clause absent an infirmity, such as fraud, as to the forum-selection clause itself. *See Cheney*, 583 F. Supp. 2d at 118 ("Fraud and overreaching must be specific to a forum selection clause in order to invalidate it."); *Marra v. Papandreou*, 59 F. Supp. 2d 65, 70 n.3 (D.D.C. 1999) (stating that "[a] claim of fraud in the inducement of a contract is insufficient to invalidate a forum selection" clause because "it is the inclusion of those specific clauses plaintiffs

seek to avoid that must have been induced by fraud" (quotation marks omitted)), *aff'd in relevant part*, 216 F.3d 1119 (D.C. Cir. 2000). Here, the plaintiffs do not argue there was any fraud, mistake, or other infirmity specific to the agreed forum-selection clauses.

The plaintiffs' second argument is that the controlling weight courts ordinarily give to forum-selection clauses should not apply here because the plaintiffs are not bringing contract claims. ECF No. 19 at 14–15. That's a dubious argument at the outset—the plaintiffs' claims sound in classic contract disputes about whether there was a meeting of the minds or misrepresentation that affects the promises made. But even accepting the plaintiffs' framing, "forum-selection clauses are often found applicable to non-contract claims." *Glycobiosciences*, 189 F. Supp. 3d at 67 (collecting cases); *see also Cheney*, 583 F. Supp. 2d at 122 (noting that "the mere fact that a plaintiff has pled his claim as a tort or a violation of federal statute does not determine whether the claim arises from the contract" (quotation marks omitted)). And, as discussed, the plaintiffs' claims clearly fall within the scope of the forum-selection clauses. *See, e.g.*, *Glycobiosciences*, 189 F. Supp. 3d at 65–69 (applying the deference to forum-selection clauses recognized in *Atlantic Marine* to non-contract claims that fell within the scope of the forum-selection clause at issue).

The plaintiffs' third argument is that the public-interest factors "weigh heavily" against honoring the forum-selection clauses, which would require them to "litigate three separate cases in three different forums." ECF No. 25 at 8–10. While the court does consider public-interest factors even when there is a forum-selection clause, the plaintiff "must bear the burden of showing that public-interest factors *overwhelmingly disfavor* a transfer." *Atl. Marine*, 571 U.S. at 67 (emphasis added). That is, having found the forum-selection clauses apply, the plaintiffs must "show that the public interest associated with litigating elsewhere outweighs all of the private interests that their agreement presumably took into account." *Azima*, 926 F.3d at 875; *see id.*

(explaining this will only occur in "rare" or "unusual" cases (quoting *Atl. Marine*, 571 U.S. at 64, 66)). Here, some public-interest factors favor the plaintiffs. The court agrees, for instance, that the interests of "administrative convenience" and "judicial economy" would favor litigating the plaintiffs' claims in one court rather than multiple. *Azima*, 926 F.3d at 875; *see* ECF No. 25 at 8. But the remaining factors are more neutral or favor transfer. For example, although the plaintiffs argue "the interest in deciding local controversies at home" favors litigation in D.C. (where the plaintiffs reside and some of the events are alleged to have taken place), BTL Industries and MMP Capital seek to send the claims against them to *their* respective homes. ECF No. 25 at 8; *see* ECF No. 18 ¶ 11 (alleging BTL Industries is a resident of Massachusetts and MMP Capital is a resident of New York). For the same reason, transfer would not be "imposing jury duty on a community unconnected to the litigation," assuming the case ends up in trial. *Azima*, 926 F.3d at 875. Finally, "familiarity with applicable law" cuts in favor of transferring the claims against BTL Industries and MMP Capital because each contract is governed by the law of its selected forum. ECF No. 21 at 2 ("This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts."); ECF No. 15 at 1 ("This EFA shall be governed and construed under the laws of the State of New York."). The court therefore concludes on this record that the plaintiffs have not shown this is "the rare, unusual, or uncommon case in which the public-interest factors defeat a forum-selection clause." *Azima*, 926 F.3d at 880; *see also Dentons US LLP v. Republic of Guinea*, 208 F. Supp. 3d 330, 347 (D.D.C. 2016) (enforcing forum-selection clauses even though it "may be inconvenient for [a party] to proceed in three separate" places because the

court could not "conclude that enforcement of the forum selection clauses would be 'unreasonable'").[2]

## III. Conclusion

For these reasons, the court grants MMP Capital's motion to transfer, ECF No. 15, and grants in part and denies in part BTL Industries' motion to dismiss, ECF No. 21. The claims against MMP Capital shall be transferred to the Eastern District of New York. The claims against BTL Industries shall be transferred to the District of Massachusetts.

AMIR H. ALI
United States District Judge

Date: August 11, 2026

[2] Some courts have conducted a severability analysis before enforcing forum-selection clauses when doing so would result in litigation in multiple courts. *See*, *e.g.*, *In re: Howmedica Osteonics Corp*, 867 F.3d 390, 408 (3d Cir. 2017); *In re Rolls Royce Corp.*, 775 F.3d 671, 679–83 (5th Cir. 2014). Here, no party has raised a severability concern, and none is apparent from the pleadings. The court accordingly does not consider severability as an issue separate from transfer.