**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DUPONT SMILES FAMILY & COSMETIC DENTISTRY, PLLC, et al.,**

**Plaintiffs,**

**v.**

**MARLIN LEASING CORPORATION d/b/a PEAC SOLUTIONS**

**Defendant.**

**Case No.: 1:25-cv-1332 (AHA)**

## PLAINTIFFS' OPPOSITION TO DEFENDANT MARLIN LEASING CORPORATION D/B/A PEAC SOLUTIONS' MOTION TO TRANSFER VENUE

### I. INTRODUCTION

Nearly seventeen months into this litigation, and with claims against BTL Industries, Inc. and MMP Capital, LLC already transferred out of this District, Defendant Marlin Leasing Corporation d/b/a PEAC Solutions ("PEAC") now moves to send the remaining piece of this case to the Eastern District of Pennsylvania. PEAC's motion is extraordinary given the fact that it never previously sought transfer, filed three motions to dismiss before this Court, and twice said it preferred to remain in this Court, once at the February 26, 2026 hearing and again in writing on August 14, 2026, after the Court asked the parties to confer and attempt to agree on a mutually agreeable district to address consolidated claims. PEAC's conduct constitutes waiver of its right to seek transfer.

In addition to the factual record supporting waiver, PEAC's motion rests entirely on paragraph 17 of the Commercial Equipment Finance Agreement ("CFA"), which recites that the Agreement "has been accepted by us in Pennsylvania, where we maintain an office, and it did

not take effect until we received the executed legal documents in our Pennsylvania office." That factual premise does not withstand scrutiny. PEAC is a Delaware corporation whose own transaction documents, corporate filings, and registered business address uniformly identify Mount Laurel, New Jersey – not Pennsylvania – as the place where it does business. PEAC's Pennsylvania presence, such as it is, consists of a standard commercial registered-agent filing maintained for corporate-compliance purposes in Harrisburg – not an operating office where this or any other transaction was accepted. Harrisburg is within the Middle District of Pennsylvania, not the Eastern District of Pennsylvania. Moreover, PEAC has waived any right to enforce paragraph 17 by its conduct in this Court. In addition, and for the independent reasons set forth below, the motion should be denied, or at minimum stayed pending resolution of the parallel jurisdictional dispute now before the Eastern District of New York.

## II. PROCEDURAL BACKGROUND

Plaintiffs commenced this action on May 1, 2025 against BTL Industries, Inc. ("BTL"), MMP Capital, LLC ("MMP"), and PEAC jointly. On June 30, 2025 PEAC filed a motion to dismiss the Complaint. ECF 11. PEAC made no mention of the forum selection clause. By July 1 both BTL and MMP had filed their motions to dismiss and transfer respectively. ECF 12, 15, 16. Again, PEAC remained silent on this issue and did not move to transfer. After Plaintiffs filed an amended Complaint on July 14, 2025, PEAC re-filed its motion to dismiss. ECF 22. Again, it did not file a motion to transfer.

Prior to the February 26, 2026 hearing, the Court instructed the parties to be prepared to discuss venue issues and the merits of the motions to dismiss. Minute Order, February 5, 2026. At the February 26, 2026 hearing, the Court asked the parties to confer during a recess on whether they could agree on a single forum – either the Eastern District of New York or the

District of Massachusetts. Counsel for PEAC stated at the recess that PEAC did not want to move to another jurisdiction and preferred to remain in this District. The parties reported in open court that Plaintiffs were willing to consolidate the case with all parties in a single alternative court, but the Defendants were unwilling to do so.

The parties participated in mediation after the February hearing, but by May 1 reported that mediation was not successful. Thereafter, Plaintiffs filed a motion to deposit funds into the Court Registry. ECF 36. On May 22, 2026 PEAC filed an opposition to the motion to deposit funds. ECF 40.

On August 11, 2026, this Court transferred Plaintiffs' claims against BTL to the District of Massachusetts and against MMP to the Eastern District of New York, applying *Atlantic Marine Construction Co. v. U.S. District Court*, 571 U.S. 49 (2013). PEAC did not seek transfer at that time. After the Court's August 12, 2026 Minute Order directed Plaintiffs and PEAC to confer about whether, in light of the Court's August 11 Opinion, the remaining claims should be transferred to either of those districts, PEAC's counsel wrote to Plaintiffs' counsel on August 14, 2026: "My client does not agree with transferring venue to either NY or MA. ***They want to keep it here in DC***." Ex. 1 (emphasis added). Plaintiffs filed a Second Amended Complaint against PEAC alone on September 16, 2026, pursuant to this Court's Minute Order granting leave to amend. PEAC filed a renewed motion to dismiss the Second Amended Complaint on September 29, 2026. ECF 47.

A thorough review of all three PEAC motions to dismiss (ECF Nos. 11, 22, 47) reveals two important points. First, there is no reference at any time to the forum selection clause PEAC relies upon now to seek transfer. Second, in the same forum selection clause PEAC relies upon here, the following language appears: "YOU AGREE THAT THIS AGREEMENT SHALL BE

GOVERNED BY THE LAWS OF THE COMMONWEALTH OF PENNSYLVANIA." Exhibit A to PEAC Motion to Transfer, ECF 48. None of the three PEAC motions make any reference to Pennsylvania law. Plaintiffs do not concede that Pennsylvania law even applies (or that any outcome would be different under Pennsylvania law), but PEAC's utter disregard of its own forum selection and choice of law provisions for 17 months supports a finding of waiver.

For the foregoing reasons, and as more fully set forth below, PEAC's motion to transfer should be denied.

## III. ARGUMENT

### a. PEAC Has Waived Any Right to Enforce Paragraph 17 by Litigating in This Court for Nearly Seventeen Months

A forum-selection clause is a contractual privilege that can be waived. *Atlantic Marine* gives a valid clause controlling weight in all but the most unusual cases, 571 U.S. at 62–63, but that rule presupposes a party that invoked the clause and acted consistently with it. Courts applying the doctrine hold that a clause "will not be deemed waived unless" the invoking party "has taken action inconsistent with it or has delayed its enforcement," and the other party "would be prejudiced by its enforcement." *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 849–51 (E.D. Va. 2014) (finding waiver); *see also Southeast Power Grp., Inc. v. Vision 33, Inc.*, 855 F. App'x 531, 535 (11th Cir. 2021) (unpublished) (finding waiver where defendant "substantially participated in the litigation to a point inconsistent with an intent to enforce the forum selection clause," and holding that "delayed resolution of the dispute" is cognizable prejudice; applying a totality-of-the-circumstances test); *Wachovia Bank, N.A. v. EnCap Golf Holdings, LLC*, 690 F. Supp. 2d 311, 327–30 (S.D.N.Y. 2010) (recognizing that waiver may be found where a party "actively pursued substantive motions" or took inconsistent positions, but

finding none on that record). Waiver is a fact-specific inquiry, and the facts here are unusually clear because they are recorded on this Court's own docket.

PEAC filed an appearance and moved to dismiss the original complaint on the merits on June 30, 2025. ECF 10, 11. The next day, MMP moved to transfer under § 1404(a) on the basis of its own forum clause. ECF 15. PEAC, which held similar transaction documents and the paragraph 17 forum selection clause, did not join that motion and filed none of its own. When Plaintiffs amended their Complaint, PEAC moved again to dismiss on the merits, ECF 22, and again did not seek transfer. On February 5, 2026 the Court set a hearing at which the parties were to be "prepared to discuss both venue and the merits of the motions to dismiss," and PEAC argued its motion to dismiss at that hearing on February 26, 2026; PEAC did not object to venue in the District of Columbia at the hearing or mention its forum selection clause. At that hearing, the Court asked the parties to confer about whether all parties could agree on a single jurisdiction, either the Eastern District of New York or the District of Massachusetts. At the recess, PEAC stated that it did not want to go to another jurisdiction and preferred to stay in this District. The parties reported in open Court that they were unable to agree to one venue for the entire case. The Court then stayed the case and referred it to mediation, with joint status reports to follow, ECF 34, 35. PEAC participated in the mediation.

After the Court's August 11, 2026 Opinion transferred the claims against MMP and BTL, the Court's August 12 Minute Order directed Plaintiffs and PEAC to confer about whether to transfer the remainder to either of those districts, and PEAC's counsel answered Plaintiffs in writing on August 14: "My client does not agree with transferring venue to either NY or MA. They want to keep it here in DC." Ex. 1. The parties then filed a joint status report informing the Court that PEAC was unwilling to consent to transfer the remaining D.C. claims to the Eastern

District of New York or the District of Massachusetts. ECF 44. The Court then granted Plaintiffs leave to narrow the complaint to the claims remaining here, and Plaintiffs filed a Second Amended Complaint against PEAC alone. ECF 45. PEAC responded on September 29, 2026 with a third motion to dismiss, ECF 47, and, the following day, for the first time, a motion to transfer. ECF 48.

That is not silence or ordinary delay. For nearly seventeen months PEAC litigated in this forum, sought a merits ruling here three times, watched a codefendant invoke its own clause the day after PEAC's first motion to dismiss, and, when the Court expressly raised the question of a different forum, told the Court it preferred to stay, and then repeated the point to Plaintiffs in writing two days after the Court's August 12 conferral order. A written statement of that kind is exactly the "action inconsistent with" enforcement that supports waiver, and it was made after the Court's August 11 Opinion had enforced the other defendants' clauses, when PEAC knew exactly what a transfer motion could achieve. A party that holds a forum clause and says it prefers the court it is in has acted "inconsistent[ly]" with enforcing the clause. *Kettler*, 55 F. Supp. 3d at 849–51. *Southeast Power* found waiver on far less: a single Rule 12(b)(6) motion, some discovery requests, and about five months of litigation in the chosen forum. PEAC's record is longer and includes an affirmative statement to the Court.

Plaintiffs are prejudiced. Under *Southeast Power*, prejudice includes "delayed resolution of the dispute," and it is plain here: enforcement of paragraph 17 now would send the one remaining piece of this case to a fourth court after seventeen months, a fully briefed motion to dismiss, a hearing, a mediation referral, two amended pleadings, and a Court-ordered narrowing of the case to PEAC alone in this District. Plaintiffs relied on PEAC's stated position. Five days after PEAC's counsel wrote that PEAC wanted to keep the case in this District, Plaintiffs

requested, and the Court granted, leave to narrow the case to the claims remaining here, ECF 44; Minute Order of Aug. 19, 2026, and Plaintiffs then filed a Second Amended Complaint against PEAC alone in this Court. ECF 45. PEAC would start over in a new court with a new motion to dismiss, and Plaintiffs would bear the cost a second time.

Even if the Court were to find that PEAC's conduct falls short of waiver, the same facts weigh heavily against transfer. Courts evaluating transfer motions consider whether the movant acted with "reasonable promptness," and may weigh unexplained delay against transfer, particularly where the motion follows lengthy motion practice. *In re Planned Parenthood Fed'n of Am., Inc.,* 52 F.4th 625, 630 (5th Cir. 2022) (denying mandamus where the district court weighed against transfer a request made seven months after unsealing and months into discovery, after a motion to dismiss was resolved; *quoting* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3847 (2d ed. 1986)); *Peteet v. Dow Chem. Co*., 868 F.2d 1428, 1436 (5th Cir. 1989). Neither case involved a forum-selection clause, but the principle bears on whether this is one of the "extraordinary circumstances unrelated to the convenience of the parties" that *Atlantic Marine* reserves. 571 U.S. at 62. *Cf. Morgan v. Sundance, Inc*., 596 U.S. 411 (2022) (waiver of the right to arbitrate turns on the waiving party's conduct, without a separate requirement that the non-waiving party prove prejudice).

PEAC may respond that the Court stayed the case for mediation, that its earlier motions to dismiss were mooted by amendment, and that the Second Amended Complaint is a new pleading. None of this is convincing or controlling. The stay began on February 27, 2026; PEAC had already litigated for eight months before it, including at a hearing devoted to "venue and the merits," and the stay did not prevent it from raising paragraph 17 before or after. The Second Amended Complaint did not add a claim or a contract; it narrowed the case to PEAC on

the same transaction and the same documents, at the Court's direction. An amendment that merely narrows a case does not reopen a defense the defendant had every opportunity to raise earlier. *See LeRoy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979), *superseded by statute* on other grounds (venue is a personal privilege that "may be waived by the parties").

The practical effect of three different forum clauses on a single transaction has been to split this matter across multiple courts, at substantial cost to Plaintiffs, and PEAC's long delay in invoking its own clause has compounded that cost. *See also Kranitz v. BTL Industries*, No. 2:26-cv-02649 (E.D.N.Y.) (see operative class action complaint, ECF No. 146 describing BTL and MMP venue splitting strategy).

**b. The Factual Premise of Paragraph 17 Does Not Match PEAC's Own Corporate Record**

A forum-selection clause is enforceable only if it is valid, and is unenforceable where enforcement would be unreasonable, including where the clause is the product of fraud or overreaching. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12–15 (1972); *see Atlantic Marine*, 571 U.S. at 62 n.5, 63 (the party resisting transfer bears the burden of showing why the clause should not be enforced). That deference does not extend to a clause whose stated factual justification is contradicted by the drafting party's own records. Paragraph 17 recites that the CFA "has been accepted by [PEAC] in Pennsylvania, where [PEAC] maintain[s] an office," and that the Agreement "did not take effect until [PEAC] received the executed legal documents in [its] Pennsylvania office." ECF 48, Ex. A, ¶ 17. That recital does not describe PEAC as it actually exists and operates.

PEAC – formally, Marlin Leasing Corporation d/b/a PEAC Solutions – is, and was at all times relevant to this transaction, a Delaware corporation. Liebeler Affidavit at Exhibit A. Its own annual filings identify Mount Laurel, New Jersey as both its "Main Business Address" and

its "Principal Business Address," and its registered agent for service of process is likewise located in New Jersey. Liebeler Affidavit, Exhibit B. Marlin Leasing Corporation announced in 2022 that it had been acquired by HPS Investment Partners LLC and "rebranded" as PEAC Solutions. The press release / announcement was made from Mt. Laurel, New Jersey. Recent SEC filings show Mt. Laurel, New Jersey as PEAC's sole operating headquarters. Liebeler Affidavit, Exhibit C.

Every document PEAC itself generated in connection with this transaction confirms the point. The September 29, 2024 Finance Approval Term Sheet (Exhibit 2), the October 29, 2024 CFA, the Early Buyout Option Addendum, and the Personal Guaranty each bear identical letterhead: "300 Fellowship Road, Mt. Laurel, NJ 08054." ECF 48, Ex. A. Apart from paragraph 17's own recital, none references any Pennsylvania address, office, or point of contact. Of additional significance – New Jersey records show the formation and existence of 29 separate Marlin Leasing entities with the name "Marlin Leasing Receivables" of which 25 are domiciled in Mt. Laurel, New Jersey. Liebeler Affidavit, Exhibit D.

PEAC is, separately, registered as a foreign business corporation in Pennsylvania, a status it has held since 2003. Liebeler Affidavit, Exhibit E. But that registration does not rescue paragraph 17's recital. The address associated with that Pennsylvania registration is Corporation Service Company (CSC) – a national commercial registered-agent service used by companies nationwide for the sole purpose of satisfying state qualification-to-do-business requirements, wholly independent of where any particular transaction is actually accepted or administered. The CSC office identified in Marlin's Pennsylvania filings is located in Harrisburg, Pennsylvania – a location that is not within the Eastern District of Pennsylvania. Liebeler Affidavit, Exhibit F. Pennsylvania law itself distinguishes a registered office maintained through a commercial

registered office provider from an operating place of business. *See* 15 Pa. Cons. Stat. § 109. Nothing in PEAC's Pennsylvania corporate registration indicates that this transaction, or any transaction, was accepted, processed, or administered anywhere other than Mount Laurel, New Jersey.

Fraud or misrepresentation specific to a forum-selection clause – as distinct from fraud in the inducement of the contract generally – is an independently recognized basis to decline enforcement of the clause, even under the demanding standard ordinarily applicable to such clauses. *See M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15 (1972); *Scherk v. Alberto-Culver Co*., 417 U.S. 506, 519 n.14 (1974). Plaintiffs do not ask this Court to resolve that question on the present record; the point, for purposes of this motion, is narrower: paragraph 17 cannot be treated as a considered, factually grounded bargain when the clause's own stated justification does not match PEAC's own contemporaneous business records. At minimum, this discrepancy warrants further factual development before any transfer is ordered.

**c. The Forum Clause Was Not Part of the Transaction Plaintiffs Actually Entered**

The record reflects that the only document Dr. Izadi executed on the date this transaction was actually struck – September 29, 2024 – was a one-page "Finace Approval – Term Sheet," [sic] setting out only the financial terms of the proposed financing (term, payment structure, documentation fee, and APR). *See* Exhibit 2. That document contains no forum-selection clause, no governing-law clause, and no jurisdictional language of any kind; it also mis-identifies the borrower as West End Dental LLC (a related entity and ultimate corporate guarantor). Paragraph 17 first appears a full month later, in the more comprehensive CFA executed October 29, 2024 – after Plaintiffs had already committed to the underlying equipment purchase and had no realistic opportunity to renegotiate or decline terms introduced after the fact. This sequence is relevant to

whether paragraph 17 was reasonably communicated to Plaintiffs as part of a genuine, bargained-for exchange, or was instead imposed after the transaction was already effectively locked in – a circumstance bearing on the clause's enforceability independent of the corporate-registration issue above.

**d. In the Alternative, the Court Should Stay Its Ruling Pending the Eastern District of New York's Resolution of the Identical Threshold Question**

PEAC's motion asks this Court to apply, without modification, the same *Atlantic Marine* framework this Court applied on August 11, 2026 in transferring the claims against MMP. That framework's continued application to this case is presently being tested in the Eastern District of New York. There, the Honorable Sanket J. Bulsara has raised, *sua sponte*, serious doubt whether the forum-selection clause in the MMP Equipment Finance Agreement – which designates "the state and federal courts sitting in Nassau County, New York" – can support federal jurisdiction at all, given that no federal courthouse has sat in Nassau County since 2000. The parties completed letter briefing on that question on September 28, 2026, and a ruling remains pending.

While the MMP clause and the PEAC clause differ in their particulars, both arise from agreements executed the same month, in connection with the same underlying transaction, and both are now the subject of serious question as to whether they reflect the clear, deliberate forum commitments *Atlantic Marine* requires before controlling weight is appropriate. Should the Eastern District of New York conclude that the premise underlying this Court's August 11 Order requires reexamination, that conclusion would bear directly on whether PEAC's motion – which relies on that same Order as its sole authority – should be granted. Judicial economy favors awaiting that ruling, which is likely to issue in the near term, rather than transferring the last remaining piece of this litigation to a fourth forum based on a legal framework whose application to this family of clauses is presently unsettled.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny PEAC's motion to transfer venue, or, in the alternative, stay its ruling on the motion pending the Eastern District of New York's resolution of the parallel forum-selection-clause dispute described above.

Dated: October 14, 2026

Respectfully submitted,

/s/ *Lars H. Liebeler*
Lars H. Liebeler, Esq.
Bar No. 416666
Lars Liebeler PC
900 7th Street, N.W., Suite 725
Washington, D.C. 20001
(703) 216-2120
LLiebeler@LHL-LawFirm.com

*—and—*

Carmita Hedman Sequeira, Esq.
(admitted pro hac vice)
Hedman Sequeira Law PLLC
2111 Wilson Blvd. Suite 800
Arlington, VA 22201
(703) 883-7808
chsequeira.law@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2026, a true and accurate copy of the foregoing was served via CM/ECF upon all counsel of record.

/s/ *Lars H. Liebeler*
Lars H. Liebeler, Esq.